# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| | ) | Def. I.D. # 2311012149 |
| v. | ) | |
| | ) | |
| | ) | |
| HAROLD WARD, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: July 30, 2026
Decided: August 12, 2026

*Upon Defendant's Motion for Postconviction Relief under Superior*
*Court Criminal Rule 61 (R1)*

**DENIED**

## MEMORANDUM OPINION AND ORDER

Emma G. Ballentine, Esquire, Deputy Attorney General, Department of Justice, 13 The Circle, Georgetown, DE 19947; Attorney for State of Delaware.

Patrick J. Collins, Esquire, Collins Price Warner Woloshin, 8 East 13th Street, Wilmington, DE 19801; Attorney for Defendant.

**KARSNITZ, R. J.**

1

## I.     PROCEDURAL BACKGROUND

On facts arising out of a November 27, 2023, traffic stop, on January 23, 2024, a Sussex County grand jury indicted Harold Ward ("Defendant") for one count of Carrying a Concealed Deadly Weapon ("CCDW"). Following a delay in the case, at final case review on September 23, 2025, the State offered Defendant a plea to a lesser-included misdemeanor offense of Carrying a Concealed Dangerous Instrument ("CCDI"). After a colloquy with me, Defendant rejected the plea offer.

Near the end of the State's case in a two-day jury trial ending on September 30, 2025, and after a colloquy with me, Defendant twice elected not to testify. Defendant's counsel at trial ("Trial Counsel") made his first motion for acquittal, which I denied. The jury found Defendant guilty of CCDW. Trial Counsel made his second motion for acquittal, which I also denied. The parties agreed to proceed to immediate sentencing. I sentenced Defendant to eight years in prison, all of which were suspended for one year of Level 3 probation.

Postconviction Counsel was appointed to represent Defendant on appeal to the Delaware Supreme Court. However, Defendant voluntarily dismissed his direct appeal so that he could promptly file a Motion for Postconviction Relief under Delaware Superior Court Rule Criminal Rule 61. On April 1, 2026, Defendant filed

that Motion, together with an Appendix thereto (together, the "Motion"), which contains, *inter alia*, an affidavit from Defendant and text messages between Defendant and Trial Counsel. Copies of the Motion were served on the State and on Trial Counsel. The Motion asserts one ground for relief: ineffective assistance of counsel. Defendant argues that he would have taken a misdemeanor plea and avoided a trial and felony conviction but for Trial Counsel's deficient advice. Defendant asks me to vacate his conviction and order the State to re-offer the CCDI plea.

In an April 8, 2026, letter to Postconviction Counsel, I expanded the record to include an affidavit from Trial Counsel (the "Trial Counsel Affidavit"). The Trial Counsel Affidavit was filed on May 12, 2026. The Trial Counsel Affidavit asserts that he proposed the plea resolution to the State and that he twice advised Defendant to accept the plea offer, but Defendant rejected that advice and insisted on going to trial. The Trial Counsel Affidavit says relatively little about Defendant's assertions of ineffectiveness of counsel contained in the Motion, discussed further below.

On May 29, 2026, after reviewing the Trial Counsel Affidavit, I issued an Order in letter form which stated that the record need not be further expanded and that there was no need for an evidentiary hearing. On June 2, 2026, Defendant timely filed a Motion for Reargument under Delaware Civil Rule 59(e), which I denied on June 12, 2026.

3

The State filed its Response to the Motion on July 10, 2026.

Defendant filed his Reply on July 30, 2026.

In my April 8, 2026, letter to Postconviction Counsel, I found that none of the procedural bars to the Motion under Rule 61 applied, and that I would therefore consider the Motion on its merits. This is my decision on the merits of the Motion.

## II.     APPLICABLE LAW

To succeed on the merits, Defendant must meet the two-part standard established in *Strickland v. Washington,*[1] as applied in Delaware.[2]  Under *Strickland*, Defendant must show that Trial Counsel's representation "fell below an objective standard of reasonableness" (the "performance prong"); and (2) the "deficient performance prejudiced [his] defense." (the "prejudice prong").[3]

As to the performance prong, Defendant must demonstrate that Trial Counsel's decisions were unreasonable. There is a presumption that Trial Counsel's challenged conduct may be considered a strategic choice, and there is deference afforded to such strategy.[4] The *Strickland* test applies to Trial Counsel's actions during plea negotiations as well as during the trial proceedings."[5]

---

[1]  466 U.S. 668 (1984).
[2]  *Albury v. State*, 551 A.2d 53 (Del. 1988).
[3]  *Strickland* at 687.
[4]  *Id.* at 689.
[5] *Burns v. State,* 76 A.3d 780, 785 (Del. 2013) (citing *Lafler v. Cooper,* 566 U.S. 156, 162 (2012)).

As to the prejudice prong, Defendant must demonstrate that there exists a reasonable probability that, but for Trial Counsel's errors, the outcome of the trial would have been different.[6] Even if Trial Counsel's performance was professionally unreasonable, it would not warrant setting aside the judgment of conviction if the error had no effect on the judgment.[7] A showing of prejudice "requires more than a showing of theoretical possibility that the outcome was affected."[8] Defendant has the burden to "affirmatively prove prejudice."[9]

*Strickland* teaches that there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in a particular order, or even to address both prongs of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant because of the alleged deficiencies. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed.[10] In every case, the court should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the

---

[6] *Albury,* at 687; *Zebroski v. State,* 822 A.2d 1038, 1043 (Del. 2003); *Wright v. State,* 671 A.2d 1353, 1356 (Del. 1996).
[7] *Strickland,* at 691.
[8] *Frey v. Fulcomer,* 974 F.2d 348, 358 (3d Cir. 1992).
[9] *Burns v. State,* 76 A.3d 780, 784-785 (Del. 2013) (quoting *Strickland,* 466 U.S. at 693).
[10] *Strickland,* at 697.

adversarial process that our system counts on to produce just results.[11]

## III.  ARGUMENTS OF PARTIES

**Ineffective Assistance of Counsel**

Defendant asserts one ineffective assistance of counsel claim. He asserts that he suffered prejudice in the form of a felony jury conviction (as opposed to a misdemeanor guilty plea) because Trial Counsel gave him deficient advice as to whether to accept the plea offer from the State based on a misunderstanding of Delaware law.

Defendant emphasizes the ellipses in the Trial Counsel Affidavit, coupled with the statements in Defendant's affidavit. For example, Trial Counsel does not address the statement in Defendant's affidavit that he told Trial Counsel that his objective was to avoid a felony conviction at all costs, even if that meant Level 5 time. Nor does Trial Counsel address the statement in Defendant's affidavit that Trial Counsel told Defendant that the case was "beatable" due to poor evidence handling by the State. Nor does Trial Counsel address his statement to Defendant that the State could not prove that the gun seized from Defendant was the same gun that was in evidence at trial. Trial Counsel does not explain his statement to the Court at final case review that he had explained to Defendant that "there are some decent

---

[11] *Id*. at 696.

6

issues here." In other words, Defendant argues that what Trial Counsel thought were decent trial issues were in fact not, based on his misapprehension of Delaware law.

**Performance**

Defendant gives three examples of how Trial Counsel's decisions during trial were unreasonable: a challenge to the admissibility of the firearm, a challenge to the accessibility and availability of the firearm, and an argument that the State was required to prove that Defendant did not have a concealed carry permit. Defendant states that these deficiencies were based on Trial Counsel's flawed understanding of how CCDW trials work.

First, in an email to the State, Trial Counsel stated that he believed that the length of time it took for the police to find the gun tended to negate the element of concealment. Defendant argues that Trial Counsel's request to take the question of concealment of the firearm from the jury by way of his first motion for a judgment of acquittal was misguided. As I stated in my denial of the motion, concealment is a classic jury issue. Defendant further argues that hiding a gun under a passenger seat is quintessential concealment of a firearm, and the length of time it took to find the gun is evidence of concealment, not the lack thereof.

Second, Trial Counsel spent considerable time during the trial eliciting testimony about the discrepancy between the .40 caliber vs. 40mm size of the gun and

the ammunition. This discrepancy appears to be a scrivener's error. After the first day of trial, Trial Counsel described this to Defendant as a smokescreen.

Third, Trial Counsel indicated in text messages to Defendant that Delaware law requires the State to prove lack of a concealed carry permit in a CCDW trial and made a second motion for a judgment of acquittal on that basis. Rather, as I stated when denying this motion, Delaware law provides that it is a defense that may have been raised by a defendant.

Taken together, Defendant argues that these actions demonstrate that Trial Counsel's representation "fell below an objective standard of reasonableness" under the *Strickland* standard.

The State argues that Trial Counsel's performance was not deficient when it came to the plea offer. He recommended the plea to Defendant more than once prior to trial. In fact, he was the one who initially proposed the misdemeanor offer to the State, and he advised Defendant to accept the misdemeanor probation plea. Additionally, Trial Counsel continued to negotiate for Defendant throughout the legal process leading up to when Defendant rejected the final plea offer at final case review. Defendant was the one rejecting the plea because, *inter alia*, he was hesitant to be on probation. At no point was the State willing to remove probation entirely from the plea offer or go below Level 2 probation, which was made abundantly clear through communications with the defense. Defendant's rejection

8

of the plea was confirmed by his signature on the plea form and during his plea rejection colloquy with me. **Defendant** chose to exercise his right to trial, and Trial Counsel performed as a competent attorney and proceeded to trial on the defenses which he perceived to be available.

**Prejudice**

Defendant argues that the deficiencies in Trial Counsel's performance, discussed above, prejudiced the outcome of the case, and that Defendant should not have to suffer a felony conviction because Trial Counsel gave him deficient advice. The State argues that Trial Counsel's performance was not deficient, and that the outcome of the case would not have been different and therefore Defendant was not prejudiced. The State relies heavily on the history of the guilty plea negotiations in the case.

The State first offered Defendant a misdemeanor CCDI with Level 3 probation, which Defendant rejected. On September 12, 2025, the State communicated with Trial Counsel via email regarding Defendant's rejection of the plea offer and the anticipation that this case was headed to trial. On September 19, 2025, prior to Final Case Review, the State sent another email regarding Defendant's rejection of the plea offer. In that email, the State repeated that it knew Defendant had rejected the misdemeanor offer of CCDI, but it re-extended the offer at a lower probation level,

Level 2. On September 19, 2025, Trial Counsel responded that he had attempted to communicate the new plea offer to Defendant and was awaiting a response. Trial Counsel also indicated to the State that he had previously recommended to Defendant that the Movant accept the misdemeanor CCDI offer and he also attempted to negotiate an even lower probation level, Level 1. The State declined to lower the probation level further.

On September 23, 2025, at final case review, the State and Trial Counsel negotiated again. Trial Counsel informed the State that he had recommended the misdemeanor plea offer to Defendant, but Trial Counsel submitted a signed copy of the plea indicating that Defendant had rejected the plea offer. Trial Counsel attempted to further negotiate a plea that would include probation before judgment, which the State declined. At final case review, I held a plea rejection colloquy with Defendant, during which he was made aware of the felony charge he faced at trial and the potential sentence. During this plea rejection colloquy, Trial Counsel stated, "I did tell him I would pursue all logical arguments, both for a motion to acquit and then before the jury, but I don't know what a judge or jury is going to do." Furthermore, on the record, Trial Counsel stated "I told him that this plea agreement is going to be null and void as of this morning due to his signature. So, if he's convicted, he loses primarily what he is seeking to keep." I addressed

10

Defendant directly: "And the final case review today is the last chance to resolve this with a plea agreement." Later I warned Defendant: "Also, too, just so you understand, because we are going to be bringing in a large number of potential jurors, we don't allow people to plead the morning of trial. So, if you show up and thought about it over the weekend and said: You know what? I've changed my mind. It's going to be too late at that point." Even after those statements by Trial Counsel and me, Defendant rejected the plea offer and his case was set for trial. Once the case was set for trial and trial began, the State did not re-extend a plea offer.

The State argues that, even if Trial Counsel made Defendant's potential case seem stronger than it actually was, Defendant was not prejudiced because Trial Counsel repeatedly recommended the plea to Defendant. Trial Counsel advised Defendant to take the plea even at the final case review and stated on the record that he did not know what a judge or jury was going to do. Defendant had another chance to contemplate the plea during the plea rejection colloquy but instead rejected the plea. In the Motion, Defendant states that he rejected the plea, even though he would have rather done prison time than get a felony on his record. But he did not need to do "prison time" in order to avoid a felony – he had multiple opportunities to accept a misdemeanor plea offer with probation. Each

11

time, Trial Counsel communicated the plea offer to his client and recommended that his client take the plea offer to avoid exposure to a felony at trial.

## IV. ANALYSIS

The parties argue two principal cases for their respective positions.

In *Burns v. State*,[12] the Delaware Supreme Court addressed the issue of ineffective assistance of counsel during plea negotiations. In *Burns,* trial counsel communicated the plea to the defendant and explained that the defendant faced jail time if he was unsuccessful at trial.[13] Trial counsel also explained the downside of accepting the plea offer, but stressed that the plea was "generous."[14] Trial counsel in *Burns* gave his professional opinion that the case was "winnable" but did not make a recommendation as to whether the defendant should take the plea or not.[15]

As to the first *Strickland* prong, the Court found that the Superior Court did not abuse its discretion in finding that trial counsel's conduct did not fall below objective standards of reasonableness. The Court reasoned that trial counsel explained the benefits of accepting the plea offer, articulated the potential of mandatory incarceration, the downsides of accepting the plea offer,

---

[12] 76 A.3d 780 (Del. 2013).
[13] *Id.* at 785.
[14]*Id.*
[15] *Id.*

12

his professional opinion that the case could be won, and that trial counsel could not guarantee a successful result.[16] As such, the Court found that trial counsel presented the defendant with enough information to make an informed decision about whether or not to accept the plea.[17]

As for the second *Strickland* prong, the defendant in *Burns* claimed that he would have accepted the plea if trial counsel had recommended it.[18] The Court found that the defendant "failed to satisfy the prejudice prong of *Strickland,* as refined by *Lafler,* that but for trial counsel's actions, [the defendant] would have accepted the plea offer."[19] The Court referenced the fact that "at the time of the offer [the defendant] insisted that he would not accept a plea that included registration as a sex offender."[22]

In *Lafler v. Cooper*,[20] the prosecution offered to dismiss certain charges and to recommend a sentence of a certain length for the remaining charges in exchange for a guilty plea.[21] "In a communication with the court [the defendant] admitted guilt and expressed a willingness to accept the offer."[22] The defendant later rejected the offer, "allegedly after his attorney convinced him that the prosecution would be

---

[16] *Id.* at 786.
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] 566 U.S. at 156 (2012).
[21] *Id.* at 161.
[22] *Id.*

unable to establish his intent to murder …"[23] On the first day of trial, the prosecution offered another, less favorable plea deal, and the defendant rejected it.[24] In *Lafler,* "all parties agreed that the performance of the defendant's counsel was deficient when he advised respondent to reject the plea offer on the grounds he could not be convicted at trial."[25] The U.S. Supreme Court clarified that it need not rule on whether the counsel's actions were deficient because all of the parties agreed that it was. Indeed, the Court went on to clarify that "an erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance."[26] The Court in *Lafler* found that "but for counsel's deficient performance there is a reasonable probability he and the trial court would have accepted the guilty plea."[27]

In my view, this case is informed more by *Burns* rather than by *Lafler*. In both *Burns* and this case, Trial Counsel indicated that the case was winnable, but still outlined the plea, its benefits, and its risks. In both cases, Trial Counsel indicated that winning was not a certainty. Defendant, like the defendant in *Burns*, rejected the plea offer for a specific reason: in *Burns,* the defendant did not want to be on the sex offender registry, which was a part of the plea. In this case, Defendant

---

[23] *Id.*
[24] *Id.*
[25] *Id.* at 163.
[26] *Id.* at 174.
[27] *Id.*

did not want to be on probation. Indeed, in this case, unlike *Burns,* Trial Counsel affirmatively recommended the plea offer to Defendant, whereas trial counsel in *Burns* did not.

In *Lafler,* the defendant wanted to accept the offered plea deal and only changed his mind when trial counsel advised him that the State could not prove an element of the charge. In this case, Defendant rejected multiple misdemeanor plea offers, despite the recommendation of Trial Counsel that he accept them. Defendant rejected the plea offers because the State declined to eliminate the condition of probation, which is different from asserting his innocence or a belief that the State could not prove the charge against him.

*****

In this case, there are two separate narratives. One is the advice that Trial Counsel gave to Defendant about possible defenses. The other is the repeated and knowing rejection of several plea offers by Defendant. In order to demonstrate a causal connection between the two and thereby satisfy the two prongs of the *Strickland* test, Defendant conflates the two.

Defendant laments that "we will never know" whether there is such a connection, because of the lack of an evidentiary hearing during which I could hear testimony, consider evidence, and judge credibility. However, as I stated in my denial of Defendant's Motion for Reargument, it is within my discretion to hold an

15

evidentiary hearing or to decide the case based on the record. I find now, as I did then, that the evidence of record is sufficient to decide this case. In my view, Defendant's statements that he was induced to reject the plea offers by Trial Counsel's deficient performance are self-serving and not credible, when the rest of the record – including the Trial Counsel Affidavit and the State's Response – is considered. This is my conclusion even though, in his affidavit, Trial Counsel chose to address only one of the parallel narratives. Trial Counsel is not required in his affidavit to address every allegation made against him by Defendant. Trial Counsel's statements about the consistency of Defendant's rejection of the numerous plea offers – including one proffered by Trial Counsel himself – are persuasive and buttressed by the record, my plea colloquies with Defendant.

## V.    CONCLUSION

For the foregoing reasons, Defendant Harold Ward's Motion for Postconviction Relief is **DENIED**.

**IT IS SO ORDERED**.

Craig A. Karsnitz
/s/ Craig A. Karsnitz

cc:    Prothonotary

16